UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

     - v. -                                 :        **INDICTMENT**

MICHAEL YIN,                                         18 CRIM 494
     a/k/a "Shaohua Yin,"                    :

                    Defendant.               :

- - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  JUL 1 6 2018

<u>COUNT ONE</u>

(Conspiracy to Commit Securities Fraud)

     The Grand Jury charges:

<u>Relevant Individuals and Entities</u>

     1.    At all times relevant to this Indictment, MICHAEL YIN,
a/k/a "Shaohua Yin," the defendant, was a partner at a long/short
equity investment firm based in Hong Kong.  YIN controlled and
used at least five brokerage accounts maintained with a brokerage
firm in the United States to conduct personal securities trading
(the "Nominee Accounts").  The Nominee Accounts were held in the
names of close relatives and other associates of YIN.

     2.    At all times relevant to this Indictment, Firm-1 was a
private equity investment firm headquartered in Beijing, China.

     3.    At all times relevant to this Indictment, Firm-2 was a
private equity investment firm headquartered in Palo Alto,
California, with offices in Beijing, China.



4.    From in or about February 2016 to in or about September 2016, Benjamin Chow, a co-coconspirator not named as a defendant herein, was the Managing Director of Firm-1. In or about September 2016, Chow and others founded Firm-2 and Chow became the Managing Partner of Firm-2.

5.    At all times relevant to this Indictment, Lattice Semiconductor Corporation ("Lattice") was a publicly traded technology company headquartered in Portland, Oregon. Lattice's shares traded under the symbol "LSCC" on the Nasdaq Stock Market, which is located in Manhattan, New York. Among other products, Lattice specialized in developing and manufacturing field-programmable gate arrays ("FPGAs"), which are integrated circuits designed to be configured by a customer or a designer after manufacturing.

## Overview of the Insider Trading Scheme

6.    From at least in or about March 2016 through in or about February 2017, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, made profitable securities trades in Lattice stock based upon material non-public information relating to a potential merger between Lattice and Firm-1 and later, Firm-2, which was provided to YIN by Benjamin Chow in violation of Chow's duties to Lattice. Specifically:

a.    As Managing Director of Firm-1 and then Managing Partner of Firm-2, Chow obtained material non-public information regarding a potential merger agreement between Lattice and Firm-1 and later, Lattice and Firm-2.    Information concerning the potential merger agreement, including the fact that the parties were exploring the possibility of a merger, was subject, among other things, to nondisclosure agreements executed between Lattice and Firm-1 and later, between Lattice and Firm-2.    Chow signed each of these nondisclosure agreements on behalf of Firm-1 and Firm-2.

b.    In violation of these nondisclosure agreements, Chow provided YIN with material non-public information regarding the potential merger between Lattice and Firm-1 and later, Firm-2.

c.    On numerous occasions, YIN used the material non-public information provided by Chow to make profitable trades in Lattice stock, yielding a total of approximately $5 million in profits.

## Chow's Confidentiality Obligations

7.    On or about April 27, 2016, Benjamin Chow signed, as Managing Director of Firm-1, a nondisclosure agreement between Lattice and Firm-1 relating to a potential merger between the

3

parties (the "Lattice/Firm-1 NDA"). The Lattice/Firm-1 NDA provided, among other things, that "[t]he fact of the exploration and evaluation of a potential strategic relationship between the Parties shall be deemed 'Confidential' and subject to the protections of this Agreement as Proprietary Information." The Lattice/Firm-1 NDA further provided that such Proprietary Information may not be disclosed or used "for any purpose, except to evaluate and/or engage in discussions regarding, and potentially pursue and effect, the potential business transaction involving the Parties."

8. On or about September 9, 2016, shortly after Benjamin Chow formed Firm-2, Chow signed, as Managing Partner of Firm-2, a nondisclosure agreement between Lattice and Firm-2 relating to a potential merger between the parties (the "Lattice/Firm-2 NDA"). The Lattice/Firm-2 NDA imposed the same obligations on Chow as were imposed on him in the Lattice Firm-1 NDA.

### YIN's Relationship With Chow

9. MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and Benjamin Chow had both previously worked at the same private equity investment firm, where they focused on investments in the technology, media and telecommunications sector.

10.    In or about March 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, sent a text message to Benjamin Chow, telling Chow that YIN was operating his own investment fund focused on long/short equity positions; in essence, that YIN was a full-time trader.   Against that backdrop, in the following months YIN and Chow met on multiple occasions for coffee and exchanged text and voice messages.

### YIN Purchases Millions of Shares of Lattice After Receiving Material Non-Public Information From Chow Relating to the Lattice Merger

11.    Beginning in or about April 2016, Benjamin Chow participated as Managing Director of Firm-1 in discussions with representatives of Lattice relating to a potential offer by Firm-1 to acquire Lattice.   On or about April 27, 2016, Chow signed the Lattice/Firm-1 NDA on behalf of Firm-1.

12.    On or about July 5, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and Benjamin Chow arranged via text message to meet that same day at a coffee shop in the China World Trade Center located in Beijing, China.   Later that night, YIN purchased a total of approximately 248,268 shares of Lattice.

13.    On or about July 7, 2016, Firm-1 submitted a confidential non-binding indication of interest to Lattice, proposing to acquire all outstanding shares of Lattice for $8.00 per share in

cash. Based on the closing trading price of $5.32 for Lattice common shares on the previous trading day, July 6, 2016, the proposal implied a premium of 50%. Firm-1's July 7, 2016 submission contemplated that Firm-1 and Lattice would approach the Committee on Foreign Investment in the United States ("CFIUS"), which is an inter-agency government committee authorized to review transactions that could result in control of a United States business by a foreign person.

14. On or about July 12, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, exchanged text messages with Benjamin Chow relating to: Firm-1's confidential indication of interest in acquiring Lattice, FPGA technology, CFIUS, and the identity of the law firm advising Firm-1 on the proposed merger (the "Law Firm"). Later on or about July 12, 2016, YIN and Chow agreed via text message to meet the following day, July 13, 2016, at Chow's office in Beijing, China. Beginning on or about July 13, 2016 through July 22, 2016, YIN purchased a total of approximately 280,283 shares of Lattice.

15. On or about July 28, 2016, Firm-1 submitted to Lattice a revised confidential non-binding indication of interest in acquiring Lattice in an all-cash transaction for a price between $8.75 and $9.00 per share. Based on the closing trading price of

$6.14 for Lattice common shares on the previous trading day, this proposal implied a premium of between 43% and 47%. The following two business days, Friday, July 29, 2016, and Monday, August 1, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, purchased a total of approximately 150,000 shares of Lattice.

16. On or about August 10, 2016, Benjamin Chow sent a text message to MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, stating that he was "in the middle of a deal," and therefore could not leave the West Coast of the United States, which is where Lattice is headquartered. The same day, YIN purchased a total of approximately 120,000 shares of Lattice.

17. On or about August 17, 2016, Lattice notified Firm-1 that it received an expression of interest from another party to acquire Lattice, but that it had declined to meet with this other party pursuant to Lattice's obligations under an exclusivity agreement Lattice had entered into with Firm-1. Via text message, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and Benjamin Chow arranged to meet that same day. Later that day, YIN purchased a total of approximately 35,800 shares of Lattice.

18. In or about early September 2016, Benjamin Chow formed a new private equity firm, which ultimately became Firm-2.

7

19.  On or about September 9, 2016, Benjamin Chow signed the Lattice/Firm-2 NDA.  That same day, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, purchased a total of approximately 44,554 shares of Lattice.  The following day, September 10, 2016, Firm-2 submitted to Lattice a confidential non-binding indication of interest to acquire Lattice for $8.30 per share in an all-cash transaction.  Based on the closing trading price of $5.98 for Lattice common shares on the previous trading day, the proposal implied a premium of 39%.

20.  On or about September 13, 2016, Lattice and Firm-2 entered into an exclusivity agreement, providing that Lattice would not initiate discussions regarding a potential acquisition with any third party through at least October 4, 2016.  Also on or about September 13, 2016, the Law Firm, now acting as counsel to Firm-2, provided Lattice's counsel with a draft merger agreement. Also on or about September 13, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and Benjamin Chow arranged to meet at a particular time that same day at the China World Trade Center in Beijing, China.  Later on the same day, YIN purchased approximately 116,387 shares of Lattice.  The following day, September 14, 2016, YIN purchased approximately 260,501 shares of Lattice.  On or about

September 15, 2016, the following day, YIN purchased an additional approximately 536,310 shares of Lattice.

21.  On or about September 16, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, sent a text message to another individual stating, in substance and in part (in translation), that a "friend" had told YIN that the Lattice merger was moving forward.  That same day, YIN purchased a total of approximately 208,300 shares of Lattice.

22.  On or about September 21, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, sent a voice message to Benjamin Chow relating to the potential merger between Lattice and Firm-2. In this message, YIN related, in substance, that YIN had heard from a banker that Lattice was concerned about obtaining CFIUS approval for the merger with Firm-2.  Chow responded by voice message that same day, September 21, 2016, stating (in translation) that "we should be able to sign the contract soon. Yeah." Beginning the following day, through and including October 12, 2016, YIN purchased approximately 2,206,760 shares of Lattice.

23.  On or about October 17, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and Benjamin Chow arranged via text message to meet that day at the China World Trade Center in Beijing, China. Following the time set for this meeting, YIN sent text messages to

two individuals advising them to purchase shares of Lattice. To one of these individuals, YIN wrote, in pertinent part (in translation), "Is your position loaded? If not, purchase 5-10% [position] of LSCC at around $6. (not urgent, buy in batches over 3-5 days)." To the other, YIN wrote, in pertinent part (in translation), "Just buy 25,000 shares of LSCC (Either change a position, or use the remaining 1/3.) For the $150,000 position, I will bear the risk for you." Also beginning the day of this meeting, October 17, 2016, through and including October 24, 2016, YIN purchased a total of approximately 1,931,102 shares of Lattice.

24. On or about November 1, 2016, Lattice senior management met with representatives of Firm-2 and finalized the merger agreement. That same day, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, purchased a total of approximately 427,949 shares of Lattice.

25. On or about November 2, 2016, Lattice's board of directors formally approved the transaction whereby Firm-2 would purchase all shares of Lattice common stock for $8.30 per share. That same day, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, purchased approximately 476,500 shares of Lattice.

26. The following day, November 3, 2016, Firm-2 and Lattice formally executed a merger agreement and issued a joint press

release announcing the merger which noted, among other things, that the $8.30 per share price represented a 30% premium to Lattice's last trade price on November 2, 2016, the last trading day prior to announcement. The agreement was signed by Benjamin Chow on behalf of Firm-2. The closing price of Lattice on November 3, 2016 was $7.55 per share, up approximately $1.18 per share from the closing price the previous day.

27. On or about November 3, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, sold a substantial quantity of the Lattice shares he had purchased, resulting in a profit of approximately $5 million.

28. The merger agreement between Lattice and Firm-2 was expressly contingent upon CFIUS approving the merger, without which the agreement would be dissolved and Firm-2 would have no obligation to purchase Lattice shares for $8.30 per share.

29. From in or about November 2016 through in or about early February 2017, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, purchased approximately 2,143,447 additional shares of Lattice at market prices which were below the merger price of $8.30 per share. During this same period, YIN sought and received from Chow material non-public information concerning the status of the CFIUS approval process for the merger between Lattice and Firm-2.

30.  On or about December 6, 2016, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, sent a text message to Benjamin Chow referencing a news report that United States lawmakers had urged rejection of the merger and asking "is it serious? Or just noise?" Chow responded "[h]appens all the time."

31.  On or about January 24, 2017, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, sent a text message to Benjamin Chow, asking, in substance and in part, whether (in translation) "that thing with you guys, later after you arrived in DC, was there any progress?" Chow responded, in substance, that he expected CFIUS to approve the merger in March.  YIN then sent another text message to Chow asking, in substance, whether the new presidential administration would present a problem for obtaining CFIUS approval.  Chow replied (in translation) "no."

### Statutory Allegations

32.  From at least in or about March 2016 through in or about February 2017, in the Southern District of New York and elsewhere, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in

violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

33. It was a part and object of the conspiracy that MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Overt Acts

34. In furtherance of the conspiracy and to effect the illegal object thereof, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, and others known and unknown, committed the following

13

overt acts, among others, in the Southern District of New York and elsewhere:

      a.   On or about September 21, 2016, Benjamin Chow sent a voice message to MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, regarding a possible merger between Firm-2 and Lattice.

      b.   On or about September 22, 2016, YIN purchased a total of approximately 417,015 shares of Lattice.

      (Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH THIRTEEN

### (Securities Fraud)

The Grand Jury further charges:

35.  The allegations set forth in paragraphs 1 through 31 and paragraph 34 are realleged and incorporated by reference as if fully set forth herein.

36.  On or about the dates set forth below, in the Southern District of New York and elsewhere, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal

Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, YIN conducted the securities transactions described below based upon material, non-public information provided to YIN by Benjamin Chow regarding a potential merger between Lattice and Firm-1 and Firm-2, in violation of duties Chow owed to Lattice:

| Count | Date(s) | Transaction |
|---|---|---|
| 2 | July 5, 2016 | Purchase of approximately 248,268 shares of Lattice |
| 3 | July 13, 2016 through July 22, 2016 | Purchase of approximately 280,283 shares of Lattice |
| 4 | July 29, 2016 and August 1, 2016 | Purchase of approximately 150,000 shares of Lattice |
| 5 | August 10, 2016 | Purchase of approximately 120,000 shares of Lattice |
| 6 | August 17, 2016 | Purchase of approximately 35,800 shares of Lattice |
| 7 | September 9, 2016 | Purchase of approximately 44,554 shares of Lattice |
| 8 | September 13, 2016 through September 15, 2016 | Purchase of approximately 913,198 shares of Lattice |

| 9 | September 16, 2016 | Purchase of approximately 208,300 shares of Lattice |
| 10 | September 22, 2016 through October 12, 2016 | Purchase of approximately 2,206,760 shares of Lattice |
| 11 | October 17, 2016 through October 24, 2016 | Purchase of approximately 1,931,102 shares of Lattice |
| 12 | November 1, 2016 | Purchase of approximately 427,949 shares of Lattice |
| 13 | November 2, 2016 | Purchase of approximately 476,500 shares of Lattice |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

## COUNT FOURTEEN

### (Securities Fraud)

The Grand Jury further charges:

37.  The allegations set forth in paragraphs 1 through 31 and paragraph 34 are realleged and incorporated by reference as if fully set forth herein.

38.  From at least in or about March 2016 through in or about February 2017, in the Southern District of New York and elsewhere, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, willfully and knowingly executed a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities

16

registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, YIN traded in Lattice stock based upon material, non-public information provided to YIN by Benjamin Chow regarding a potential merger between Lattice and Firm-1 and Firm-2, in violation of duties Chow owed to Lattice.

(Title 18, United States Code, Sections 1348 & 2.)

## FORFEITURE ALLEGATION

39.  As a result of committing the offenses alleged in Counts One through Fourteen of this Indictment, MICHAEL YIN, a/k/a "Shaohua Yin," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency

representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

    a. A sum of $1,743,626.83 held at Interactive Brokers, LLC in an account with the last four digits 9828 in the name "Lizhao Su," representing the net proceeds from the sale of Lattice shares on or about November 3, 2016 in this account;

    b. A sum of $238,387.55 held at Interactive Brokers, LLC in an account with the last four digits 1566 in the name "Yan Zhou," representing the net proceeds from the sale of Lattice shares on or about November 3, 2016 in this account;

    c. A sum of $816,872.14 held at Interactive Brokers, LLC in an account with the last four digits 8920 in the name "Jun Qin," representing the net proceeds from the sale of Lattice shares on or about November 3, 2016 in this account;

    d. A sum of $2,144,110.09 held at Interactive Brokers, LLC in an account with the last four digits 9198 in the name "Zhiqing Yin," representing the net proceeds from the sale of Lattice shares on or about November 3, 2016 in this account; and

e. A sum of $144,710.11 held at Interactive Brokers, LLC in an account with the last four digits 3862 in the name "Lizhao Su," representing the net proceeds from the sale of Lattice shares on or about November 3, 2016 in this account.

### Substitute Asset Provision

40. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981,
Title 21, United States Code, Section 853(p), and
Title 28, United States Code, Section 2461(c).)

_____
FOREPERSON

_____
GEOFFREY S. BERMAN
United States Attorney

20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

MICHAEL YIN,
a/k/a "Shaohua Yin,"

Defendant.

## INDICTMENT

18 Cr. ____ (____)

(Title 18, United States Code, Sections
371, 1348 & 2; Title 15, United States
Code, Sections 78j(b) & 78ff; and Title
17, Code of Federal Regulations,
Section 240.10b-5)

GEOFFREY S. BERMAN
United States Attorney.

**A TRUE BILL**

Foreperson.

July 16, 2018

Filed Indictment. Case assigned to Judge Koeltl
U.S.M.J. Debra Freeman

21